DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a denial of postconviction relief. Albert Weathers, appellant, was convicted of aggravated possession of drugs in March 2006, in the Lucas County Court of Common Pleas. The offense is a violation of R.C. 2925.11(A) and (C)(1)(b) and a third degree felony. The trial court sentenced Weathers to serve a three year prison term for the offense. *Page 2 
 {¶ 2} Weathers appealed his conviction to this court, claiming an error in jury instructions and that the jury verdict was against the manifest weight of the evidence. In a decision and judgment entry issued on September 28, 2007, in State v. Weathers, 6th Dist. No. L-06-1166,2007-Ohio-5307, we affirmed.
 {¶ 3} Weathers petitioned for postconviction relief in the trial court, based upon claimed ineffective assistance of counsel. The trial court conducted an evidentiary hearing on the petition on October 3, 2007, during which Weathers submitted testimony of seven witnesses, including testimony by his trial counsel. In a judgment entry filed on January 14, 2008, the trial court denied postconviction relief. Weathers appeals that judgment. He asserts two assignments of error on appeal:
 {¶ 4} "I. It constituted error to hold that it was reasonable for defendant's trial counsel not to interview the disinterested witnesses before deciding not to use them at trial. (Findings of Fact, Conclusions of Law and Judgment Entry at 6)
 {¶ 5} "II. It constituted error to hold that defendant was not prejudiced. (Findings of Fact, Conclusions of Law and Judgment Entry at 7)"
 {¶ 6} On June 8, 2005, police conducted a search of Weathers' house on Upton Avenue pursuant to a search warrant. Police officers testified at trial concerning evidence and contraband discovered in the search. Police discovered a baggie containing 40 tablets that were subsequently identified as Percocet. Percocet is a prescription drug and a schedule II narcotic. The baggie was hidden in the cassette tape well of a boom box in Weathers' bedroom. Police also discovered four boxes of sandwich bags, a police *Page 3 
scanner, and $4,000 in cash in the bedroom. The cash denominations included 100 twenty dollar bills, 24 fifty dollar bills, and eight one hundred dollar bills.
 {¶ 7} A criminalist from the Toledo Police Department crime lab testified that there were 40 tablets and they each weighed 22.63 grams. He analyzed the tablets and determined that they contained acetaminophen and oxycodone. Ocycodone is the active ingredient of Percocet. The criminalist testified that the drugs exceeded the bulk amount for the drug as the bulk amount was 30 tablets at a weight of 20 grams per tablet.
 {¶ 8} Creston White testified at trial that the pills, discovered in the search, were his and that he had a prescription for them. When questioned as to an apparent delay in coming forward with his claim of ownership of the Percocet, White testified that he told police that the pills were his at the scene on the day of the search. White also testified that he lived with Weathers at the time and was staying in the basement. No prescription was produced at trial. No prescription container was discovered in search of the house.
 {¶ 9} At the time of trial White was serving a sentence in a state penitentiary on a drug conviction. Weathers agrees that White has "an extensive prior record of felony convictions."
 {¶ 10} Weathers' mother, Katie Weathers, testified at trial that she was outside the house at the time of the search and arrest of her son. While outside, she heard Creston White keep saying that the pills were his and that he could prove it. He kept saying it to anyone who would listen and was ultimately told to "shut up" by an unidentified police officer who came out from the residence. *Page 4 
 {¶ 11} Detective Michael Awls was the lead investigator at the scene. He denied that Creston White told him that the Percocet pills were his. Other police officers denied knowing Creston White or whether he was present.
 {¶ 12} Appellant, Albert Weathers, also testified at trial. He testified that he was not aware of the Percocet pills until the day he was arrested. He had taken Percocet, by prescription, for injuries in the past. He denied the pills that were discovered in the search were his. He testified that the boom box, identified as where the drugs were hidden, was owned by Creston White.
 {¶ 13} He also testified that the $4,000 cash was his wife's money and that she had received a "big" income tax refund. He claimed that he lacked records from his wife concerning the source of the cash, however, because they were separated and not on the best of terms. He testified that the police scanner was also his wife's but it no longer worked. He denied sandwich bags were kept in the bedroom.
 {¶ 14} Weathers also testified that he could hear from inside the house Creston White "blabbering on" outside but "couldn't tell exactly what he was saying." He testified that he learned shortly after his arrest that White had been claiming outside that the pills were his.
 {¶ 15} The petition for postconviction relief is based upon a claim of ineffective assistance of counsel. Weathers argues that White's credibility at trial was crucial to the defense and that trial counsel was deficient in failing to interview and call additional *Page 5 
witnesses to testify who could corroborate that White made the statement to police that the pills were his at the scene.
 {¶ 16} Trial counsel relied on testimony by White and by Weathers' mother at trial to establish the fact that White admitted to police at the scene that the drugs were his. Both, however, were subject to impeachment at trial. White's credibility at trial was subject to impeachment on the basis of prior felony convictions and the fact that he was imprisoned in a state penitentiary at the time of trial on a drug conviction. Weathers' mother was subject to impeachment on the basis of bias due to her relationship to Weathers. At least three of the proposed additional witnesses have no felony records and no special relationship to Weathers.
 {¶ 17} To establish ineffective assistance of counsel, a criminal defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."Strickland v. Washington (1984), 466 U.S. 668, 687. Prejudice underStrickland v. Washington requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 18} Additionally, in considering a claim of ineffective assistance of counsel, a court must be "highly deferential" to trial counsel and "indulge a strong presumption that *Page 6 
counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner.State v. Hamblin (1988), 37 Ohio St.3d 153, 155-56, sentence reversed on other grounds, Hamblin v. Mitchell (C.A.6, 2003), 354 F.3d 482.
 {¶ 19} "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." State v. Carter (1995),72 Ohio St.3d 545, 558, citing Strickland v. Washington at 689.
 {¶ 20} In this case, the trial court conducted an evidentiary hearing on the petition for postconviction relief, pursuant to R.C. 2953.21(E). Weathers presented seven witnesses at the hearing. Two were Weathers, himself, and his former trial counsel, attorney V. Robert Candiello. The other five were proposed additional witnesses who heard White state loudly and repeatedly, while outside the residence, that the pills were his. This was while police remained on the premises on the day of Weathers' arrest. White was variously described as "yelling," "parading up and down the street, hollering and screaming," or "raising hell" that the pills were his. Police told White, in strong terms, to be quiet. The five witnesses to White's statements included two next door neighbors, two residing in the neighborhood, and another friend who stopped while driving by upon seeing police at Weathers' house. *Page 7 
 {¶ 21} Weathers does not dispute that there was nothing new added by the five proposed additional witnesses that was not already in evidence at trial through the testimony of Creston White and Weathers' mother. Weathers claims, instead, that three of the five witnesses would have been more credible witnesses at trial because they lacked felony records and also lacked any personal relationship to Weathers.
 {¶ 22} Attorney Candiello testified that Weathers said he knew at the time of trial of at least one or two other witnesses who would corroborate that White made the statement as to ownership of the pills. As to the importance of confirming that White made the statement, Candiello recognized the risk of relying too heavily on the credibility of White: "Creston White is Creston White. He says it — I mean, whether he says it on the stand or says it on the street, he's still the convicted felon." The credibility of Creston White would remain a crucial issue at trial even were these other witnesses to testify. Their testimony as to White's statement was limited to whether White made the statement and not to whether the statement was true. None of the witnesses had knowledge as to whether White's statement as to ownership of the pills was true.
 {¶ 23} Trial counsel testified that he discussed with Weathers the choice not to call additional witnesses to corroborate that White made the statement: "And we discussed whether we should call them or not, and I guess I felt looking at the case as a whole that I didn't want to overdo what a — Creston would have said. Creston's reputation, that I didn't feel that was overly necessary. What I did feel and I did indicate to Albert, I says [sic] if you're going to be successful in this case, you have to get your wife in." *Page 8 
 {¶ 24} Two witnesses testified at trial as to whether Weathers possessed the pills — Weathers and White. Trial counsel chose not to overemphasize the issue of White's credibility and did not call additional corroborative witnesses as to the statement. Such witnesses would corroborate that White made the statement. They would not address whether the statement itself was accurate.
 {¶ 25} In State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, the Supreme Court of Ohio considered a claim of ineffective assistance of counsel that was raised in proceedings for postconviction relief. The Supreme Court recognized that a trial court that conducts a postconviction hearing on claimed ineffective assistance of counsel "plays a unique role in the consideration of claims of ineffective assistance of counsel. It is the only court that actually hears testimony on that issue." Id. at ¶ 54. The Supreme Court reasoned that "[t]he trial judge can delve into the motivation or reasoning of trial counsel through the trial counsel's testimony. The court can hear the testimony of witnesses that were never called to testify at the original trial and can determine the worth of their testimony as well as the witnesses' credibility." Id.
 {¶ 26} Where a trial court conducts an evidentiary hearing in proceedings for postconviction relief, "a trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence." Id. at ¶ 58; accord, State v. White, 118 Ohio St.3d 12,2008-Ohio-1623, ¶ 45. *Page 9 
 {¶ 27} The trial court found that "[counsel's decision not to interview and use additional witnesses at trial to supplement the testimony of Creston White and Katie Weathers was reasonable. The decision was a strategic determination * * *."
 {¶ 28} Appellant argues, under Workman v. Tate (C.A.6, 1992),957 F.2d 1339, that the failure to interview the proposed additional trial witnesses constitutes negligence, not trial strategy. However, theWorkman v. Tate decision is distinguishable. Here none of the proposed additional witnesses would testify as to any new matter not already in evidence through White's and Katie Weathers' trial testimony.
 {¶ 29} We conclude that there was competent, credible evidence supporting the trial court's determination that the decision not to interview and call additional witnesses to supplement the testimony of Creston White and Katie Weathers that White claimed the pills were his was a reasonable strategic decision by trial counsel. Accordingly, we find that appellant's Assignment of Error No. 1 is not well-taken.
 {¶ 30} In his second assignment of error, Weathers asserts that the trial court erred in finding that he was not prejudiced by trial counsel's failure to interview and call the additional corroborative witnesses. In State v. Gondor, the Ohio Supreme Court recognized that in postconviction proceedings based upon claimed ineffective assistance of counsel, "[t]he trial judge can delve into the motivation or reasoning of trial counsel through the trial counsel's testimony. The court can hear the testimony of witnesses that were never called to testify at the original trial and can determine the worth of their testimony as well as the witnesses' credibility." State v. Gondor at ¶ 54. *Page 10 
 {¶ 31} There was such a postconviction hearing in this case that included testimony by trial counsel and the proposed additional witnesses. The trial court found evidence of prejudice from failure to call additional witnesses lacking. The trial court noted that the jury heard the substance of the proposed additional witness testimony through testimony from White and Katie Weathers at trial. Unlike in Bigelow v.Haviland (N.D.Ohio 2007), 476 F.Supp.2d 760, the failure to call these additional witnesses did not represent a failure to pursue legitimate witnesses for an alibi defense.
 {¶ 32} To succeed at trial, appellant had to overcome evidence tending to link him to the drugs. Not only were the drugs found in his bedroom, police discovered $4,000 in cash and boxes of sandwich bags in the bedroom as well. The bedroom was located upstairs and Creston White roomed in the basement.
 {¶ 33} Trial counsel testified that it was understood in defense of the case that the cooperation of appellant's wife was essential for a successful outcome at trial. She did not testify. Her testimony would have gone to the source of the cash, whether she had borrowed the boom box from White, and whether she resided in the bedroom alone at the time of the search.
 {¶ 34} Under these facts, there was credible, competent evidence to support the trial court's conclusion that appellant failed to show a reasonable probability that the outcome at trial would have been different if the five proposed additional witnesses had testified at trial. Accordingly, we find that appellant's Assignment of Error No. 2 is not well-taken. *Page 11 
 {¶ 35} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas denying postconviction relief is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J. CONCUR. *Page 1